IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY JACKSON o/b/o M.J., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:09CV271-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Shirley Jackson o/b/o M.J.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security

("Commissioner") denying her son's application for Supplemental Security Income under

the Social Security Act.  The parties have consented to entry of final judgment by the

Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs

submitted by the parties, the court concludes that the decision of the Commissioner is due

to be affirmed.

**BACKGROUND[2]**

Plaintiff's mother first sought mental health treatment for plaintiff at Montgomery

---

[1]  The court refers to M.J. as the "plaintiff" in this memorandum of opinion.

[2]  The court has carefully compared the ALJ's summary of the evidence (R. 20-24) to the record and finds the ALJ's summary to be thorough (the court has reviewed the treatment notes for January 4, 2008 and February 18, 2008 at R. 209, 249 which were omitted from the summary) and accurate (except that Dr. Cotter's May 17, 2007 diagnoses included "ruled out" ADHD, combined type, rather than "rule out" as stated at R. 22 of the decision, see R. 206).  Accordingly, the court does not find it necessary to include a detailed description of the record in this opinion.

Area Mental Health Authority on May 7, 2002, when plaintiff was eight years old.  He was diagnosed with attention deficit hyperactivity disorder, combined type, and oppositional defiant disorder. He attended counseling twice after his intake appointment, once in September 2002 and again in November 2002, until his mother terminated services against advice. (Exhibit 1F). Plaintiff resumed mental health treatment in January 2004 with Behavioral Medicine, when his mother reported that plaintiff was hyperactive and that his teachers had requested that he be evaluated.  After an intake evaluation, Dorn R. Majure, Psy.D., and David D. Hall, D. O., diagnosed plaintiff with ADHD, combined type.  They established a treatment plan including psychotherapy and medication management.  Plaintiff attended appointments through the end of April 2004, at which his medications were adjusted.  Plaintiff did not return for further treatment for seventeen months.[3]  On September 30, 2005, plaintiff was re-evaluated by Dr. George DeMuth, who diagnosed plaintiff with ADHD, combined type. Dr. DeMuth noted plaintiff's mother's report that plaintiff had become increasing disruptive since discontinuing his medication, and he established a treatment plan for the plaintiff which included medication management and psychotherapy. His medication was adjusted on October 6, and the treatment note for October 20, 2005 indicates medication compliance without side effects, and with a decrease in problematic

---

[3]  At plaintiff's evaluation on September 30, 2005, plaintiff's mother stated that she had discontinued treatment in 2004 because plaintiff's medications made him lethargic and too sleepy to function in school. However, the April 2, 2004 treatment note indicates that plaintiff had significant improvement with medication compliance, without side effects.  (R. 177).  No side effects were reported on April 30, 2004, and plaintiff's prescription was refilled.  (R. 176).

behaviors.  (Exhibit 5F).  At about this same time, on October 17, 2005 (protective filing date), plaintiff filed the present application for Supplemental Security Income (SSI), alleging disability since October 4, 2005 on the basis of attention deficit hyperactivity disorder. (R. 63-68, 74).[4]

The next mental health treatment evidenced in the record occurred nineteen months later, when plaintiff was admitted to Laurel Oaks Behavioral Health Center for inpatient treatment "secondary to out-of-control behavior, homicidal and assaultive behavior, sexual acting out, severe school problems and failure of outpatient treatment."  (R. 190).  Plaintiff claimed that he was admitted because "he was put out by his mother, went to his aunt's home and she called the social worker."  (R. 203).   Plaintiff was then a thirteen-year-old seventh grader, and he was in alternative school due to multiple behavioral problems.  His mother reported that plaintiff had, *inter alia*, assaulted her and his younger brother and had been aggressive with others, and was getting into multiple fights, lying and stealing.  She stated that he had tried to set their apartment on fire twice, had stabbed the refrigerator with a butcher knife, and had burned a hole in her sofa.  Plaintiff remained an inpatient at Laurel Oaks for over a month and received therapy and medication management.   He was discharged on June 16, 2007 with discharge diagnoses of intermittent explosive disorder,

---

[4] Plaintiff does not allege disability on the basis of physical problems. (R. 68). Although plaintiff has been treated for physical problems, including upper respiratory infections, sinusitis, pharyngitis and allergic rhinitis, his record of pediatric medical treatment is notable primarily for recurrent H. Pylori gastritis in 2002 and 2003 subsequent problems with gastroesophageal reflux disease and gastritis, treated with Prilosec and Prevacid.  (Exhibits 2F, 3F and 9F).

mood disorder not otherwise specified, conduct disorder childhood onset, and impulse control disorder not otherwise specified. (R. 192). Plaintiff's treating psychiatrist noted that his prognosis was "guarded due to compliance with medication and follow-up with medical management and therapy" but his "level of functioning had improved enough to resume normal activities and to receive less intensive services." (Id.). Upon discharge, his DHR social worker was to schedule plaintiff's therapy and psychiatric appointments. (Id.; Exhibit 7F). Plaintiff was evaluated for intake at Montgomery Area Mental Health Authority on July 27, 2007 and, while his history and reported problems were noted, no abnormalities in his current mental status were observed on examination. (R. 225). Dr. Mejer's notes for August 13, 2007 indicate that plaintiff had discontinued use of his prescribed Strattera upon his discharge from Laurel Oaks two months earlier, and that he had also quit taking Geodon because he did not like how he felt. Dr. Mejer prescribed Depakote. (R. 218).

Plaintiff returned to his "regular" school, McIntyre Middle School, at the beginning of the school year. However, he was arrested shortly thereafter when, according to his mother's testimony, he "picked up a pair of scissors and put it to a child's head and threatened to cut him." He was found guilty by the juvenile court and was sent to "Air Base," a youth detention center, for a month. (R. 266-69, 274-75). He resumed taking Strattera while he was there; Dr. Mejer noted at plaintiff's September 17, 2007 appointment – a few days after his release from "Air Base" – that he was calmer, less challenging, and had an increased ability to focus. Dr. Mejer prescribed Strattera and Depakote. (R. 216-17). Plaintiff's mental health counselor visited plaintiff and/or observed him at the alternative

4

school five times between his release from "Air Base" in mid-September and mid-November 2007, noting steady progress and no abnormalities in his current mental status.  She reported discussing lying and negative behavior with him on November 15, 2007 and she noted non-compliance with medications on September 19th and 20th. (R. 211-15).  Plaintiff was suspended from alternative school three times, for three days each time, between October 18th and when he next saw Dr. Mejer on January 4, 2008 (R. 117); Dr. Mejer noted that plaintiff was non-compliant with medications, his last use of medication had been at "Airbase," his behavior was "much worse" without medications, and that plaintiff's mother "appreciates improved target [symptoms with] adherence." Plaintiff agreed to use his medications, and Dr. Mejer  again prescribed Strattera and Depakote.  (R. 209-10; Exhibit 8F).

On January 30, 2008, an ALJ conducted an administrative hearing on plaintiff's claim. Plaintiff's mother testified that plaintiff was then taking his prescribed medications and that she has "to supervise him to take it."  (R. 271).  She testified about the circumstance of his detention at "Air Base." After hearing testimony from plaintiff's mother about plaintiff's continued problems with authority, hyperactivity, inability to concentrate, aggressive behavior, and another three-day suspension from alternative school imposed the previous day (see R. 117), the ALJ decided that it was necessary to order another psychological consultative examination and to obtain treatment records of ongoing mental health treatment. Therefore, he continued the hearing.   (R. 265-82).

On February 18, 2008, plaintiff's mother spoke to Dr. Mejer by telephone.  She

5

reported that plaintiff had scratched initials in his arm with a safety pin and had "insisted" that a teacher give him a ride home by getting in her car. (R. 259). Dr. Mejer's treatment note for March 3, 2008 reflects that labs taken on January 25th showed "[no] VPA."[5] Plaintiff's mother reported that she was fearful he would harm others, and that he had been expelled from school since February 18, 2008. (R. 257). On May 22, 2008, plaintiff's DHR therapist noted that plaintiff was non-compliant with medications. (R. 256).

The ALJ held a supplemental hearing on July 14, 2008. The report of the recent consultative psychological examination was then in the record; Dr. Majure had diagnosed "acute stress disorder" and "conduct disorder." He had also determined that plaintiff's level of intellectual functioning was in the low average range, and that the claimant was "mildly" impaired in his ability to understand, remember and carry out instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting. (Exhibit 10F).[6] Plaintiff's mother testified that he has continued to have difficulty completing tasks and sitting still, and he engages in annoying behavior. He loses his temper and does not take responsibility for his own actions. Since the last hearing, he has twice stolen from Walmart. Plaintiff has a scar under his eye resulting from an incident in which he "throwed the broom up" when plaintiff's mother was getting on to him about not sweeping the kitchen or washing dishes after she had told him to do so – she thought he was going to hit her, so she grabbed

---

[5] Valproic acid is the generic name for Depakote. *The Pill Book* (14th ed.) at p. 1192.

[6] As plaintiff's counsel noted at the hearing (R. 315), Dr. Majure's opinion did not specifically address the domains of child functioning.

the broom, and it broke in half and cut him under the eye. (R. 293-98).  Dr. Doug McKeown, a clinical and forensic psychologist, appeared as a medical expert.  He testified, after reviewing the record, that plaintiff would not meet or medically equal listings 112.05, 112.08 or 112.11, and that he has a less than marked impairment in attending and concentrating and in interacting with others, and no specific limitations in the other four domains.  (R. 286-89).

The ALJ rendered a decision on August 12, 2008, in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time from the filing date through the date of the decision.  On January 27, 2009, the Appeals Council denied plaintiff's request for review and, accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).   "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court.  See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence

7

preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### The ALJ's Findings

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)). In this case, the ALJ determined that plaintiff, an adolescent, has not engaged in substantial gainful activity. R. 19.

"The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). The ALJ found that plaintiff has the severe impairment of: acute stress disorder, conduct disorder, attention deficit hyperactivity

disorder, and marijuana abuse.  R. 19.

"For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278  (citing 20 C.F.R. §§ 416.911(b), 416.924(d).)  This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.).  As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").
>
> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79.  In this case, the ALJ found that plaintiff did not have any impairment or combination of impairments which met or medically equaled a listed impairment.  R. 19.

"Finally, even if the limitations resulting from a child's particular impairment[s] are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings.  In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the

child's normal life activities. The C.F.R. specifies six major domains of life:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

 (v) Caring for [one]self; and

(vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[7] The ALJ determined that plaintiff has no limitation in moving about and manipulating objects, no limitation in the ability to care for himself, and no limitation in the domain of health and physical well-being.  (R. 28-30).  He determined that plaintiff has "less than marked" limitations in the remaining three domains: acquiring and using information;,

---

[7] " 'A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

attending and completing tasks, and interacting and relating with others. (R. 25-28). Thus, the ALJ concluded that the plaintiff is not disabled. (R. 24).

### Plaintiff's Contentions

Plaintiff argues that the ALJ erred by failing to: cite the specific "listing" he considered, provide his rationale for his determination that plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listing, and explain how he considered plaintiff's mental impairments in combination. He further contends that the ALJ erred by failing to find that plaintiff's combination of impairments met or medically equaled Listings 112.04 (mood disorders), 112.08(A)(6)(personality disorders) and/or 112.11 (attention deficit hyperactivity disorder). However, plaintiff does not suggest that his impairments "meet" the specified requirements of any Listing. Rather, he argues that "[t]he voluminous number of psychotropic medications . . . used to treat [his] mental impairments highlight the severity imposed thereby" and document that those impairments "are at least equal in severity and duration" to the three specified Listings.[8] Plaintiff's final argument regarding the "meet or equals" finding is that "the ALJ's failure to further develop the record with respect to the severity of [his] mental impairments requires reversal or remand." (Plaintiff's brief, pp. 6-8).

Plaintiff further contends that the ALJ failed to provide adequate rationale for his

---

[8] At the beginning of the first hearing, plaintiff's counsel identified the three listings above and argued that plaintiff's limitations were of listing level severity. (R. 265). However, at the second hearing, plaintiff's counsel identified only two of the listings – 112.08 and 112.11 – and no others. (R. 293).

functionality findings and, therefore, that they lack substantial evidentiary support. He points to two specific domains – "interacting and relating with others," and "attending and completing tasks" – and argues that substantial evidence of record demonstrates that his impairments impose either marked or extreme limitations in these two domains, rather than "less than marked" limitations, as found by the ALJ.

Plaintiff's argument that the ALJ failed to develop the record is without merit. Plaintiff was represented before the ALJ and – when it appeared that additional evidence was necessary – the ALJ terminated the first hearing, ordered a consultative examination, and asked plaintiff's counsel to provide additional evidence of ongoing treatment. (R. 279-81). Plaintiff does not identify any particular evidence that the ALJ should have but failed to obtain, and the record does not demonstrate the existence of any evidentiary gaps sufficient to demonstrate prejudice. See Graham v. Apfel, 129 F.3d 1420 (11th Cir. 1997)(even where a claimant is unrepresented and has not waived the right to be represented, remand is not warranted in the absence of "evidentiary gaps which result in unfairness or 'clear prejudice'")(citing Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995)). The evidence of record was sufficient to permit a finding as to whether plaintiff was disabled and the ALJ did not, accordingly, err by failing to seek additional evidence.

The court further rejects plaintiff's "substantial evidence" argument as to the ALJ's conclusion that plaintiff does not have an impairment or combination of impairments which meets or medically equals a listing, and as to his findings regarding the level of plaintiff's limitations in the functional domains. Rather than providing a reasoned argument explaining

12

how the evidence does not permit a reasonable conclusion that plaintiff does not meet or equal a listing, the plaintiff merely lists pages of the record (*i.e.*, "83, 117, 172, 174, 117 [plaintiff likely meant to list page 177], 178, 180, 190-193, 201-206, 209, 218, 219, 252-53" (Plaintiff's brief, p. 8)); lists medications prescribed for plaintiff at various times over the course of the relevant time period (*i.e.*, "Strattera, Depakote, Abilify, Metadate, Geodon, Concerta, and Risperdal" (id.)); and argues that these pages and medications "document[] the fact" that plaintiff's impairments "are at least equal in severity and duration" to Listings 112.04, 112.11 and, most particularly, 112.08. (Id., at p. 8 and n. 2).[9]  Some of the pages identified by plaintiff include evidence which supports the ALJ's finding, and some additional pages not identified by the plaintiff also support the ALJ's finding.

Plaintiff's substantial evidence argument regarding the functional domains is more informative, as he identifies the evidence which he contends demonstrates marked or extreme limitations in the domains of interacting and relating with others and attending and completing tasks. (Plaintiff's brief, pp. 8-9)  However, the issue before the court is not whether the ALJ had evidence before him which could also have permitted a finding favorable to the plaintiff; rather, the court is tasked with determining whether the record as a whole provides substantial evidentiary support for the ALJ's finding.  See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported

---

[9] As noted above, plaintiff makes no specific argument that he "meets" a particular listing.

by substantial evidence."). Plaintiff's argument ignores the expert opinions of non-examining psychologist Dr. McKeown and consultative examiner Dr. Majure as to the extent of his limitations, and he points to no medical opinion that his conditions meet or medically equal a listing or that he has a marked or greater functional limitation in any domain.[10] Further, plaintiff fails to acknowledge treatment records and other evidence supporting the ALJ's findings.  For example, plaintiff cites page 83 as evidence in his favor. On that particular page of the record, part of the disability report completed by plaintiff's mother in November 2005, plaintiff's mother marked a block indicating that plaintiff does not generally get along with her or other adults.  However, she also checked blocks indicating that – at least at that time – plaintiff had friends his or her own age, was able to make new friends, generally got along with school teachers, and played team sports.  (R. 83).  Another example is plaintiff's citation to page 218, which reflects the psychiatrist's notation, "Fights cont[inue,] disrespectful, argues," but ignores the treatment note from the very next visit indicating, "Calmer, less challenging[,] ↑focus."  (R. 216).

---

[10]   Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review."  The Ruling indicates that the medical opinions of such consultants must be considered, and states that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).

Plaintiff's argument disregards the ALJ's determination that, when plaintiff takes his medications, his behavior improves, but he is chronically non-complaint with prescribed medications and therapy (R. 24). There is ample evidence supporting this conclusion. The ALJ questioned plaintiff's mother as to whether plaintiff had told her the reasons why he does not take his medication, and whether she supervises him in taking his medication or just gives him the pills and asks him to take them. She did not offer any reason or explanation regarding why plaintiff did not take his medication, but responded, "I make sure I'm supervising to take it. I have to supervise him to take it." (R. 270-71). Plaintiff does not address this conclusion by the ALJ, and does not argue that it is unsupported by substantial evidence or otherwise improper. A review of the record as a whole demonstrates substantial support for the ALJ's findings.

In view of the court's conclusion that the ALJ's findings are supported by substantial evidence, the court also finds plaintiff's contention that he is entitled to reversal as a matter of law because the ALJ did not specifically identify the listings he considered or set forth his analysis of the evidence as to the listings (Plaintiff's brief, pp. 6-7) to be without merit. See Glenn v. Astrue, 2009 WL 3063335, *4 (M.D. Ala. Sept. 22, 2009)("[A]lthough the ALJ failed to specify the Listings he considered, because substantial record evidence supports the ALJ's finding that [plaintiff] did not meet or medically equal a Listing, remand is improper.")(citing Turberville ex rel. Rowell v. Astrue, 316 Fed. Appx. 891, 893 (11th Cir. 2009)); see also Keane v. Commissioner of Social Security, 205 Fed. Appx. 748, 750 (11th Cir. 2006)("'While Appendix 1 must be considered in making a disability determination, it

is not required that the Secretary mechanically recite the evidence leading to [his] determination. There may be an implied finding that a claimant does not meet a listing.'")(quoting Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir.1986)).

## CONCLUSION

Upon consideration of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law and, accordingly, that it is due to be AFFIRMED.  A separate judgment will be entered.

Done, this 30th day of June, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE